IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| P. H. Glatfelter Company, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 15-MC-00046 |
| | ) | |
| Windward Prospects Limited, | ) | |
| | ) | |
| Respondent. | ) | |

| | | |
|---|---|---|
| APPVION, INC. and | ) | |
| NCR CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08-CV-00016-WCG |
| | ) | [LEAD CASE] |
| P. H. Glatfelter Co., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**P. H. GLATFELTER COMPANY'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL WINDWARD PROSPECTS LIMITED TO PRODUCE DOCUMENTS PURSUANT TO GLATFELTER'S DULY SERVED SUBPOENA**

# INTRODUCTION

Windward Prospects Limited ("Windward") has sufficient contacts in the United States to justify the exercise of this Court's jurisdiction to compel Windward to produce subpoenaed documents. This Court has previously recognized that Windward, or its predecessor Arjo Wiggins Appleton ("AWA"), is a real party-in-interest by virtue of its power of attorney over Appvion Inc.'s ("Appvion" f/k/a Appleton Papers Inc. or "API"[1]) Fox River claims and its indemnification obligation to Appvion. (Dkt.[2] 507 at 7; Dkt. 1700 at 6). Even Appvion has conceded that "Windward may be deemed a real party-in-interest," (Dkt. 1657 at 23) and that Appvion has "assigned its rights to recoveries from [Fox River] claims to Windward" by virtue of the 2001 Fox River Paperweight Development Corporation ("PDC") Environmental Indemnity Agreement. (Dkt. 1657 at 18; Dkt. 1660-2). Indeed, this Court ordered AWA to produce documents in 2009 despite the fact that AWA had no ownership interest in Appvion because "in many ways the relationship between AWA and Appleton Papers, Inc. is, for purposes of this lawsuit, even closer." (Dkt. 507 at 6).

In its May 15, 2015 Order denying Glatfelter's motion to dismiss Appvion's Ninth Amended Complaint, this Court concluded that dismissal of Appvion's claims was not warranted under Rule 17 because "[N]owhere has Windward acquired the underlying right of recovery itself, such that it would render Appvion not a true party in interest." (Dkt. 1700 at 4). Although

---

[1] For consistency, Glatfelter will refer to Appvion, Inc. as Appvion even when Appvion was formerly known as Appleton Papers Inc. ("API") during the relevant time period. However, Glatfelter has not modified quotations that refer to Appvion by its former name. Appvion and API are one and the same.

[2] "Dkt." refers to docket entries in the lead case, *Appvion, Inc. v. P. H. Glatfelter Co.*, No. 08-CV-00016-WCG (E.D. Wis.). "Miscellaneous Dkt." refers to docket entries filed during this discovery dispute in the District of Massachusetts, *P. H. Glatfelter Co. v. Windward Prospects Ltd.*, No. 15-MC-91228 (D. Mass.), which have now been entered on the docket in this Court pursuant to the transfer order.

this Court ruled that Windward's interest in the litigation did not usurp Appvion's right to bring claims in its own name, documents have since been obtained, including documents obtained from Appvion's insurance coverage litigation in Brown County, Wisconsin,[3] that demonstrate that Windward not only has a right to recovery in this litigation, but that its interest in the litigation has indeed usurped Appvion's interest in the litigation.

Pursuant to a power of attorney given by Appvion in 2004 "that authorizes Windward Prospects to act on its behalf for Fox River claims," Christopher Gower and Brian Tauscher have both testified in the Brown County insurance coverage litigation as authorized representatives of Appvion. *See* Declaration of Francis A. Citera ("Citera Decl."), Exhibit ("Ex.") A [Transcript, November 17, 2011 Motion Hearing in Brown County] at 5:12-6:4; Ex. B [Transcript, February 21, 2007 Deposition of Christopher Gower in Brown County] at 17:23-18:6. Christopher Gower testified that "AWA has the right to conduct the defense, to make insurance claims, to negotiate with the government; it has the right to manage the entire Fox River issue on behalf of API, and I am the representative of AWA in that respect." *See* Citera Decl., Ex. B at 138:18-139:4.

Brian Tauscher similarly testified that Windward was not only given "complete discretion" to pursue Appvion's Fox River claims, including against its insurers, but also that Windward was given "a right to the [insurance] recoveries themselves." *See* Citera Decl., Ex. A [Transcript, November 17, 2011 Motion Hearing in Brown County] at 9:10-15; Ex. C [Transcript, October 31, 2011 Motion Hearing in Brown County] at 34:21-35:3; *see also* Ex. B [Transcript, February 21, 2007 Deposition of Christopher Gower in Brown County] at 95:8-97:6.

---

[3] *See Columbia Casualty Company v. Arjo Wiggins Appleton PLC*, No. 05-cv-36 (Wis. Cir. Ct., filed Jan 5, 2005), which Glatfelter will refer to as the Brown County insurance coverage litigation.

2

To date, those insurance recoveries exceed $200 million.[4] *See* Citera Decl., Ex. A [Transcript, November 17, 2011 Motion Hearing in Brown County] at 37:15-38:16; 53:5-12.

Glatfelter expects to prove that Windward is similarly situated in this case: "it has the right to manage the entire Fox River issue on behalf of [Appvion]," it has the right to control settlement or litigation of Appvion's claims in this case, and it will have a right to any recovery. The party named "Appvion" in this case is not the company that makes paper in Appleton, but is instead Windward, a corporation spun out of a French conglomerate with no business other than this litigation. Those facts go to the very core of "Appvion's" right to recover under section 107 of CERCLA if at all, and if it has a right to recover under any section of the statute, the equities of that equitable claim. Glatfelter is entitled to conventional document discovery to prove those facts.

Against this backdrop Windward asserts that this Court lacks personal jurisdiction over Windward. That claim is belied by these and other facts set forth below. As a result, this Court should grant Glatfelter's motion to compel (Miscellaneous Dkt. 3) and order Windward to produce the documents requested in Glatfelter's subpoena.

**ARGUMENT**

Rule 45 of the Federal Rules of Civil Procedure provides that "[a] command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(D). If a person commanded to produce documents makes a timely written

---

[4] Appvion's equitable cost recovery claim is for $199,397,433.31—a claim that is being pursued and controlled by Windward, for Windward's ultimate benefit. *See* Citera Decl., Ex. D [Letter from D. Birke Re: Appvion Inc.'s Supplemental Rule 26(a) Disclosures, dated March 10, 2015]. As a result of the September 2014 Settlement Agreement, NCR also appears to have at least a residual interest in those recoveries, but we are uncertain presently as to how all that works given the incomplete responses Glatfelter has received to its discovery requests.

3

objection, then the serving party may move for an order compelling production or inspection. Fed. R. Civ. P. 45(d)(2)(B)(i).

Windward asserts no substantive objection to this discovery. If there is a burden problem, that is what the meet and confer process is for. If there are privilege issues, that is what a privilege log is for. A flat refusal to respond to a subpoena flouts the litigation process, and that litigation process is what Windward does; it is Windward's principal—if not its sole— business.

### I. Windward Manages Appvion's Fox River Claims and Defenses and has Documents Relevant to Appvion's Claims Asserted Against Glatfelter.

Glatfelter served a subpoena on Windward through its agent, Brian Tauscher, after this Court's May 15, 2015 decision found other means were available to seek discovery of Windward as a nonparty (as opposed to party discovery pursuant to Federal Rule of Civil Procedure 34). *See* Citera Decl., Ex. E [Glatfelter's Subpoena]; Ex. F [Affidavit of Special Process Server]. Windward had the opportunity to move to quash Glatfelter's subpoena, but failed to do so. Instead, Windward provided minimal responses and refused to produce any documents based on the incorrect assertion that Windward is not subject to personal jurisdiction in the United States. *See* Citera Decl., Ex. G [Windward's June 25, 2015 Letter]; Ex. H [Windward's Response to Glatfelter's Subpoena]. Windward has sought to run the clock in light of fact discovery closing on September 15, 2015.

Prior to filing a motion to compel in the District of Massachusetts,[5] Glatfelter attempted to meet and confer with Windward's counsel, even offering to discuss an alternative location or

---

[5] Glatfelter originally filed its motion to compel in the District of Massachusetts, the district of compliance for the subpoena, and simultaneously sought transfer to this Court for resolution. *See P. H. Glatfelter Co. v. Windward Prospects Ltd.*, No. 15-MC-91228 (D. Mass.). Windward further sought to delay proceedings by opposing transfer, by filing a motion to stay the transfer

4

date for compliance. Due to Windward's position that Windward is not subject to discovery in the United States, Glatfelter was unable to resolve the dispute. The Honorable Marianne B. Bowler held a hearing in the District of Massachusetts and granted Glatfelter's motion to transfer the matter to this Court for resolution.

Windward has represented to the Court that Windward is not subject to personal jurisdiction in any federal court because Windward has no employees in the United States and conducts no business in the United States. Windward even goes as far as to state Mr. Tauscher is not Windward's employee. (Miscellaneous Dkt. 16 at 2). This is simply not true. Mr. Tauscher offered Windward's ratification of Appvion's claims before this Court as Windward's Director and General Counsel. (Dkt. 1658 at 1). Additionally, Mr. Tauscher testified in the Brown County insurance coverage litigation, that he is in fact an employee of Windward:

> Q: Good afternoon, Mr. Tauscher. You are employed by Windward Prospects, Limited.
> A: Yes.
> Q: You are the general counsel of Windward Prospects Limited.
> A: Yes.

*See* Citera Decl., Ex. A [Transcript, November 17, 2011 Motion Hearing in Brown County] at 5:4-11.[6]

As the Court is aware, Appvion, Windward, NCR, and BAT entered into a settlement agreement in September 2014 resolving claims among themselves concerning the Fox River. Appvion filed a version of that agreement with the U.S. Securities and Exchange Commission

---

order once it was granted, and by filing objections to the order. Windward's objections were overruled, and the matter is now properly before this Court. Windward's efforts show its attempt to run the clock at Glatfelter's expense as fact discovery is scheduled to close in less than a month.

[6] In the Brown County insurance coverage litigation, DeWitt, Ross & Stevens, S.C. by Dennis Birke, Esquire, the firm currently retained by Appvion, Inc. in this litigation, appeared on behalf of both Appvion's predecessor and Windward's predecessor. *See* Citera Decl., Exs. A-C.

5

with the Windward notice address redacted.  *See* Citera Decl., Ex. I [2014 Funding Agreement as Publicly Filed by Appvion] at 87.  Later, NCR produced a more lightly redacted version that shows that notices to Windward under that September 2014 agreement are to be sent to Mr. Tauscher at an address in New Hampshire, at a telephone number with a "603" area code, and at the email address "bmt@windwardprospects.com."  *See* Citera Decl., Ex. J [2014 Funding Agreement as Produced by NCR], at 45.

Windward's predecessor was given "complete discretion" to manage the defense of Fox River claims, and under that discretion, Mr. Tauscher has acted as a representative of Appvion. *See* Citera Decl., Ex. C [Transcript, October 31, 2011 Motion Hearing in Brown County] at 34:21-22; Ex. A [Transcript, November 17, 2011 Motion Hearing in Brown County] at 9:15. Based on Windward and Appvion's indemnification agreements, and power of attorney, Glatfelter reasonably believes that Windward has relevant documents in its possession. Moreover, Mr. Tauscher is the one who possesses many of those documents.

> Q: Mr. Tauscher, in what capacity are you here today?
> A: I'm here as an authorized representative of Appleton Papers Inc.
> Q: Are you employed by Appleton Papers?
> A: I am not.
> Q: What is your relationship to Appleton Papers?
> A: I am the general counsel of a company called Windward Prospects Limited. That company was formerly known as Arjo Wiggins Appleton Limited, and that company gave an indemnity to Appleton Papers about a decade ago for Fox River claims, and it is in that capacity that I'm testifying today.

*See* Citera Decl., Ex. C [Transcript, October 31, 2011 Motion Hearing in Brown County] at 30:4-14.

Appvion granted Windward's predecessor "a power of attorney that authorizes Windward Prospects to act on [Appvion's] behalf for Fox River claims."  *See* Citera Decl., Ex. A at 5:22-24; *see also* Citera Decl., Ex. C at 35:9-12.  In the Brown County insurance coverage litigation,

6

Christopher Gower described Windward's power of attorney as "quite a broad power of attorney" and that Mr. Gower "wear[s] an API hat in all matters relating to the Fox River." *See* Citera Decl., Ex. B [Transcript, February 21, 2007 Christopher Gower Deposition in Brown County] at 137:11-13.

The Brown County insurance coverage litigation is replete with references to Windward's authority to control the Fox River litigation, and this discoverable information must be part of the pending federal litigation. Windward should not be permitted to hide its interest in the Fox River litigation and to support further Appvion's attempt to keep the Court and parties in the dark regarding its recoveries.

> A: . . . One of the elements that both the government and the other PRPs view as critical to that is ability to pay, and whether we agree with it or not, receiving lots of money from external sources somehow increases the size of the target on Appleton Papers, and that's against all of our interests. So we have never disclosed this information beyond a very small set of people.
>
> Q: And explain to whom you have disclosed it.
>
> A: Windward Prospects discloses this information to two individuals at Appleton Papers Inc[.] and asks that the information be kept to the tightest possible group at Appleton Papers. The information is also shared with representatives of British American Tobacco.

*See* Citera Decl., Ex. C at 54:6-18.

Windward's role as the real "Appleton Papers" in this matter goes back further in time. In a letter dated March 4, 2005, Randall Stone on behalf of the Intergovernmental Partnership wrote to Andrew Schlickman, who at the time was active as counsel for NCR and "Appleton Papers." The letter begins: "I [that is, Mr. Stone] am writing in response to your [that is, Mr. Schlickman's] recent call soliciting the Intergovernmental Partners' reactions to a number of possible settlement approaches being considered by NCR Corporation and Arjo Wiggins

7

Appleton (on behalf of Appleton Papers Inc.)." *See* Citera Decl., Ex. K [Letter from R. Stone dated March 4, 2005].

If Mr. Tauscher lacks the authority to act on Windward's behalf, then Windward's ratification to this Court was offered improperly, and Mr. Tauscher's testimony in the Brown County insurance litigation should not have been received. Mr. Tauscher is in fact an employee of Windward, but even if he were not, he is an agent of Windward doing Windward's business, and that business is substantially—if not exclusively—in the United States and in this Court. Windward's claim that it has no contacts or employees in the United States lacks merit and cannot be the basis for refusing to produce documents.

## II. The Documents Glatfelter Seeks are Relevant, Nonprivileged Documents Relating to Glatfelter's Defenses and Claims and the Document Requests Do Not Impose an Undue Burden on Windward.

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. *See* Fed. R. Civ. P. 26(b). "The scope of discovery obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *E.E.O.C. v. Rexnord Indus., LLC*, No. 11-CV-777, 2012 WL 2525652, at *6 (E.D. Wis. June 29, 2012).

Windward's interest in the litigation, and control over Appvion's claims, is relevant to Glatfelter's ability to defend against those claims. The underlying action before this Court is an equitable action that depends on who has paid what, and how much. Appvion's pending motion for a protective order does not limit Glatfelter's ability to seek discovery from Windward as a nonparty, and does not seek to limit that discovery even if the motion were granted. The Brown County insurance coverage litigation testimony of Brian Tauscher and Christopher Gower shows Windward likely has different documents than Appvion. Windward has indemnified Appvion and received in return an assignment of Appvion's rights to insurance, to contribution, and to

8

cost recovery.  Windward also has a power of attorney from Appvion to manage all this litigation, and Mr. Tauscher is the agent who exercises that power of attorney.  This is not just about collateral sources as Windward contends.  This is about the underlying claims of contribution and cost recovery that Appvion has asserted against Glatfelter on Windward's behalf as Windward has usurped Appvion's interest in the Fox River litigation.

Windward is not a nonparty individual facing undue burden by a subpoena.  Instead, Windward is a corporation that seeks to benefit from a claim that Appvion alleges is worth nearly $200 million.  It cannot be said that Glatfelter's discovery requests impose an undue burden on Windward that justifies Windward's refusal to produce **any** documents.  Any burden imposed on Windward must be weighed against Windward's interests in this litigation.  Windward is subject to personal jurisdiction in the United States and exercises a power of attorney to control Appvion's defenses and claims in the Fox River litigation.  Glatfelter reasonably believes that Windward has in its possession documents relevant to Glatfelter's claims and defenses in the Fox River litigation.  Windward is functionally a plaintiff on a very large claim in complicated litigation to which sophisticated parties and this Court have devoted serious attention and effort for a generation overall, and for almost eight years in this case alone.  At this late date, parties, including Windward, ought to litigate like adults.  Windward should be compelled to produce its documents.

## CONCLUSION

Windward's efforts to evade discovery must come to an end.  Windward has an interest, if not the sole interest, in Appvion's claims in the Fox River litigation.  Glatfelter should be allowed the opportunity to learn about that relationship because the suit pending before this Court is equitable.  Glatfelter properly served a subpoena on Windward pursuant to Federal Rule

9

of Civil Procedure 45, and Glatfelter respectfully asks the Court to compel Windward to produce the documents requested in Glatfelter's subpoena.

Dated: August 31, 2015

        Respectfully submitted,

        */s/ David G. Mandelbaum*
        David G. Mandelbaum
        Caleb J. Holmes
        Jillian C. Bunyan
        Kaitlyn R. Maxwell
        Greenberg Traurig, LLP
        2001 Market Street
        Suite 2700
        Philadelphia, PA  19103

        Francis A. Citera
        Greenberg Traurig, LLP
        77 West Wacker Drive
        Suite 3100
        Chicago, IL  60601

        ***Attorneys for***
        ***P. H.  Glatfelter Company***

10

Case 1:15-mc-00046-WCG   Filed 08/31/15   Page 11 of 12   Document 39

# Certificate of Service

I hereby certify that on August 31, 2015, I electronically filed the foregoing P. H. Glatfelter Company's Supplemental Memorandum in Support of its Motion to Compel Windward Prospects Limited to Produce Documents Pursuant to Glatfelter's Duly Served Subpoena with the Clerk of Court for the United States District Court for the Eastern District of Wisconsin by using the Electronic Court Filing System ("CM/ECF"). I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ David G. Mandelbaum*
David G. Mandelbaum
