**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

_____

|                                    |   |                      |
|------------------------------------|---|----------------------|
| P.H. GLATFELTER COMPANY,           | ) |                      |
|                                    | ) |                      |
| Movant,                            | ) |                      |
|                                    | ) |                      |
| v.                                 | ) | No. 15-MC-00046-WCG  |
|                                    | ) |                      |
| WINDWARD PROSPECTS LIMITED,        | ) |                      |
|                                    | ) |                      |
| Respondent.                        | ) |                      |

_____

---

### RESPONDENT WINDWARD PROSPECTS LIMITED'S RESPONSE TO THE "SUPPLEMENTAL" MEMORANDUM FILED BY MOVANT P.H. GLATFELTER COMPANY

---

Jeremy M. King
OLSHAN FROME WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300
jking@olshanlaw.com

Dated:  September 2, 2015

# Table of Contents

Page

A. Glatfelter's "Supplemental" Brief Is Replete With Misrepresentations ............................3

    1. Glatfelter's First Misrepresentation: "This Court Has Previously Recognized That Windward … Is A Real Party-In-Interest" .................................3

    2. Glatfelter's Second Misrepresentation: "This Court Ordered AWA To Produce Documents In 2009" ...................................................................4

    3. Glatfelter's Third Misrepresentation: "Documents Have Since Been Obtained … That Demonstrate That Windward … Has Indeed Usurped Appvion's Interest In The Litigation".......................................................5

    4. Glatfelter's Fourth Misrepresentation: Windward "Will Have A Right To Any Recovery"....................................................................................6

    5. Glatfelter's Fifth Misrepresentation: "Windward Asserts No Substantive Objections To This Discovery" .........................................................7

    6. Glatfelter's Sixth Misrepresentation: "Windward Has Sought To Run The Clock In Light Of Fact Discovery Closing" .......................................8

    7. Glatfelter's Seventh Misrepresentation: Mr. Tauscher Is An "Employee" Of Windward .................................................................................9

    8. Glatfelter's Eighth Misrepresentation: "Appvion's Pending Motion For A Protective Order Does Not Limit Glatfelter's Ability To Seek Discovery From Windward" ...............................................................................11

B. This Court Lacks Personal Jurisdiction Over Windward ................................13

C. Glatfelter Should Be Sanctioned...................................................................17

CONCLUSION..............................................................................................17

# Table of Authorities

Page

CASES

be2 LLC v. Ivanov,
  642 F.3d 555 (7th Cir. 2011) ............................................................................................14, 15

Brennan v. AT&T Corp., No. 04-CV-433,
  2006 WL 306755 (S.D. Ill. Feb. 8, 2006) .................................................................................5

Burger King Corp. v. Rudzewicz,
  471 U.S. 462 (1985)................................................................................................................14

Burns v. Bank of Am., No. 03 CIV. 1685 RMB JCF,
  2007 WL 1589437 (S.D.N.Y. Jun. 4, 2007) ...........................................................................12

Carlson v. City of Delafield, No. 08-C-751,
  2010 WL 1641915 (E.D. Wis. Apr. 21, 2010)........................................................................17

Gen. Parts Distribution, LLC v. Perry, No. 12-MC-93 SRN/SER,
  2013 WL 3223374 (D. Minn. Jun. 25, 2013)..........................................................................12

Griffin Whitaker, LLC v. Torres, No. CIV.A. DKC 10-0725,
  2010 WL 2696704 (D. Md. Jul. 7, 2010).................................................................................16

Hasbro, Inc. v. Serafino,
  168 F.R.D. 99 (D. Mass. 1996)...............................................................................................12

Helicopteros Nacionales de Colombia, S.A. v. Hall,
  466 U.S. 408 (1984)................................................................................................................14

In re Subpoena to Witzel,
  531 F.3d 113 (1st Cir. 2008)...................................................................................................12

Int'l Shoe Co. v. State of Washington,
  326 U.S. 310 (1945)................................................................................................................14

Lakeside Brige & Steel Co. v. Mountain State Constr. Co.,
  597 F.2d 596 (7th Cir. 1979) ..................................................................................................14

McKay v. Town & Country Cadillac, Inc., No. 97-C-2101,
  2002 WL 664024 (N.D. Ill. Apr. 23, 2002) ..............................................................................5

Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assoc's of Houston
  Metroplex, P.A.,
  623 F.3d 440 (7th Cir. 2010) ..................................................................................................14

3376635-1  Case 1:15-mc-00046-WCG   Filed 09/02/15   Page 3 of 22   Document 41

*Murphy v. Village of Hoffman Estates*, No. 95-C-5192,
 1999 WL 160305 (N.D. Ill. March 17, 1999) ........................................................................... 5

*Northern Grain Marketing, LLC v. Greving*,
 743 F.3d 487 (7th Cir. 2014) ................................................................................................... 14

*Prolitec, Inc. v. Scentair Techs, Inc.*, No. 12-C-483,
 2014 WL 143768 (E.D. Wis., Jan. 10, 2013) .......................................................................... 17

*RepublicBank Dallas, N.A. v. First Wis. Nat'l Bank of Milwaukee*,
 636 F. Supp. 1470 (E.D. Wis. 1986) ......................................................................................... 5

*Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A SR,
 2013 WL 5652759 (W.D.N.Y. Oct. 15, 2013) ........................................................................ 12

OTHER AUTHORITIES

Fed. R. Civ. P. 17 ........................................................................................................................ 3, 9

Fed. R. Civ. P. 26(b)(2)(C) ........................................................................................................ 12, 13

Fed. R. Civ. P. 37(a)(5) ................................................................................................................... 17

Fed. R. Civ. P. 45 ...................................................................................................................... 12, 17

Without seeking leave of Court, on August 31, 2015, Movant P.H. Glatfelter Company ("Glatfelter") filed its so-called "supplemental" memorandum of law [Dkt. No. 39] ("Supplemental Brief") in support of its motion to compel Windward Prospects Ltd. ("Windward") to produce irrelevant, duplicative, and cumulative material in response to a subpoena Glatfelter improperly served by hand on one of Windward's directors at his residence. Glatfelter's filing[1] violates the rules of this Court and must be stricken from the record, along with the Declaration of Francis A. Citera [Dkt. No. 40] and the exhibits attached thereto. If this Court does not strike Glatfelter's improper filings, then Windward, by limited and special appearance[2] through its attorneys, Olshan Frome Wolosky LLP, respectfully submits its Response To The "Supplemental" Memorandum Filed By Movant P.H. Glatfelter Company, together with the supporting Declaration of Jeremy M. King, dated September 2, 2015 ("King Decl"), and Declaration of Brian M. Tauscher, dated September 2, 2015 ("Tauscher Decl.").

Glatfelter's "Supplemental" Brief is little more than an attempt to mislead this Court and confuse the facts through a series of half-truths and outright misrepresentations. Glatfelter's clear purpose is to shore up one of the fatal defects in Glatfelter's motion: this Court's lack of personal jurisdiction over Windward. Impermissibly, Glatfelter does this through improper post-briefing submission of purported additional facts. Glatfelter's efforts fail in two respects. First, its mischaracterization and misrepresentation of the record cannot be the basis for finding

---

[1] Continuing the same practice employed in connection with its prior motions, Glatfelter did not serve its "Supplemental" Brief on Windward, and instead merely emailed and mailed the submission to the undersigned counsel, despite having been informed on numerous occasions that Windward has not authorized the undersigned to accept service of process on its behalf. *See, e.g.,* Dkt. No. 20 Ex. P at 2.

[2] Windward makes this limited and special appearance in this District Court for the sole purposes of responding to Glatfelter's "Supplemental" Brief. In fact, there is no motion pending before this Court, as the United States Court for the District of Massachusetts found Glatfelter's motion to compel "moot," likely because this Court's determination of Appvion's pending motion for a protective order and the related motions will moot Glatfelter's request to compel. Either Glatfelter will obtain its document from Appvion or not at all. Glatfelter has not filed any motion in this Court. By making this limited and special appearance, Windward does not consent to jurisdiction and does not waive its position that the courts of the United States do not have jurisdiction over Windward.

1

personal jurisdiction over Windward.  Second, Glatfelter is not permitted to file multiple "Supplemental" Briefs with this Court in an effort to resuscitate its losing arguments.

Windward has put before this Court the multiple reasons why both Glatfelter's subpoena and its motion to compel are improper.[3]  In summary, Windward is not subject to personal jurisdiction [Dkt. No. 16 at 9-12]; Glatfelter did not properly serve its subpoena or its motion [Dkt. No. 16 at 12-14]; the subpoena seeks irrelevant, duplicative, and cumulative production of documents previously requested from Appvion [Dkt. No. 16 at 14-18]; the subpoena improperly seeks privileged and confidential information [Dkt. No. 16 at 19-20]; and the subpoena is unduly burdensome to Windward [Dkt. No. 16 at 7-8, 16-20].

Windward will not readdress each of these issues here, and will instead restrict the discussion only to matters raised in Glatfelter's latest effort.  In fact, Glatfelter's submission does not address <u>any</u> of Windward's objections directly.  Instead, it appears to be a plainly improper collateral attack on this Court's May 15, 2015, Order in the action styled *Appvion, Inc. v. P.H. Glatfelter Co., et al.*, Case No. 08-C-00016-WCG (E.D. Wis.) (the "Cost Recovery Action") (at Dkt. No. 1700),[4] in which this Court denied Glatfelter's motion seeking a ruling that Windward was the "real party in interest" in that action.

Glatfelter's purported "Supplemental" Brief lacks any citation to authority and is based entirely on misleading or outright false representations to the Court.  Often, Glatfelter's prevarication is revealed in the very documents Glatfelter cites as evidence.  Windward submits this response so that the record can be clarified and the issue of this Court's lack of personal jurisdiction can be free from Glatfelter's intentional obfuscation of the true facts.

---

[3] *See* Dkt. Nos. 16, 17, 35, each of which is incorporated herein by reference.

[4] This order has also been filed as an exhibit in this action at Dkt. No. 20 Ex. L.

### A. Glatfelter's "Supplemental" Brief Is Replete With Misrepresentations

1. Glatfelter's First Misrepresentation: "This Court Has Previously Recognized That Windward … Is A Real Party-In-Interest"[5]

As this Court knows well, it did not make that ruling. On the page of the May 15 Order cited by Glatfelter, this Court stated "both Appvion and Windward may conceivably be regarded as real parties in interest." [May 15 Order at 6.] Earlier in that same Order, this Court stated "nowhere has Windward acquired the underlying right of recovery itself, such that it would render Appvion not a true party in interest…. [T]he right to receive proceeds from a lawsuit does not mean the party has usurped another as a real party in interest." [May 15 Order at 4.] Ultimately, this Court properly ruled that Appvion's claims against Glatfelter would be the "sole source of any recovery from Glatfelter," and denied Glatfelter's request to make Windward a party.

Glatfelter's gamesmanship here is apparent: it is using its patently duplicative subpoena to wage an improper collateral attack on this Court's prior orders and end-run the anticipated ruling on already-filed and fully-briefed motions in the Cost Recovery Action. As this Court noted, "[t]he point of Rule 17 is to protect defendants from lawsuits from multiple parties pursuing the same claims." [May 15 Order at 5.] The real party in interest doctrine has nothing to do with personal jurisdiction, the legal issue Glatfelter's "Supplemental" Brief purports to address. Glatfelter merely rehashes its prior and tired arguments in a misguided attempt to obtain "conventional document discovery" after it has been told by this Court that Windward is not a party and that Glatfelter is therefore not entitled to party discovery from Windward. The simple fact is that Appvion has claims against Glatfelter, and, in order to avoid any doubt as to Glatfelter's risk of multiple lawsuits, Windward has ratified Appvion's prosecution of those

---

[5] Supplemental Brief at 1.

3

claims. Nothing entitles Glatfelter to have the documents it has requested in party discovery produced twice: once from Appvion and then again from Windward via third-party discovery.

> 2. Glatfelter's Second Misrepresentation: "This Court Ordered AWA To Produce Documents In 2009"[6]

This statement is belied by this Court's own order. In 2009, this Court ruled that "the documents in [Windward's] possession are within the control of [Appvion]" and, on that basis, granted the motion to compel Appvion to produce documents. [Cost Recovery Action Dkt. No. 507 at 7.][7] In 2009, this Court did not order Windward to do anything.

This Court has even suggested how Glatfelter should go about obtaining the documents it seeks by referencing its 2009 order compelling production from Appvion in its May 15 Order denying Glatfelter Rule 33 and 34 discovery from Windward. [Cost Recovery Action Dkt. No. 1700 at 6]. Glatfelter wants to turn this Court's 2009 ruling on its head so that, rather than take the Court's hint, it can harass Windward with irrelevant, duplicative and cumulative discovery. At the time Glatfelter issued its subpoena, Glatfelter already had sought via party discovery from Appvion the exact same material now demanded from Windward. Appvion's motion for a protective order and Glatfelter's mirror-image motion to compel already had been filed with this Court.[8] If Glatfelter had heeded this Court's suggestion, then it should have taken no further steps because the demands for these documents already were squarely before this Court. But seeking these documents from the proper source, Appvion, would have denied Glatfelter the opportunity to misuse the subpoena process collaterally to attack this Court's prior ruling on the real party in interest doctrine, which now appears to be the real purpose of this proceeding. The

---

[6] Supplemental Brief at 1.

[7] The Court also granted a motion to compel a separate entity, Appleton Coated LLC. There was no motion made to compel document production from Windward.

[8] Cost Recovery Action Dkt. Nos. 1671, 1684, 1688, 1692, 1693, 1698. These documents also have been filed in this matter at Dkt. No. 20 Exs. F-K.

4

Court was right in May, and resolution of Appvion's protective order motion will determine whether documents will be produced to Glatfelter.

> 3.    Glatfelter's Third Misrepresentation:   "Documents Have Since Been Obtained … That Demonstrate That Windward … Has Indeed Usurped Appvion's Interest In The Litigation"[9]

Glatfelter has pointed to <u>nothing</u> indicating that Appvion's right of recovery against Glatfelter has been taken by Windward.  Glatfelter's insinuation that it has recently received some documentation that changes the relationship between Appvion and Windward is whole-cloth fabrication.[10]  Windward's relationship with Appvion is a matter of contract, and those contracts have been publicly available since 2001.

The examples of documents purportedly "obtained" by Glatfelter after this Court's May 15 Order reveal Glatfelter's lie.  Glatfelter cites to the July 12, 2004, Power of Attorney given by Appvion to Windward.  This document was produced in the Cost Recovery Action in February 2015, well prior to this Court's May 15 Order.  The only other materials cited by Glatfelter are two 2011 hearing transcripts and a 2007 deposition transcript, where the witnesses unequivocally state they are testifying on behalf of Appvion.  These transcripts do not alter, nor could they possibly alter, the basic legal arrangement establishing the rights and relationship between Windward and Appvion, all of which are in Glatfelter's possession and all of which Glatfelter either steadfastly ignores or purposefully misrepresents to this Court.

---

[9] Supplemental Brief at 2.

[10] Glatfelter also offers no explanation as to why it did not submit this recently-filed evidence at the time it made its motion.  If Glatfelter seeks to rely on these documents, which were in its possession, then it had an obligation to present the documents to the Court with its motion.  *See RepublicBank Dallas, N.A. v. First Wis. Nat'l Bank of Milwaukee*, 636 F. Supp. 1470, 1472 (E.D. Wis. 1986) ("[A]ll affidavits in support of a motion must be submitted with the motion unless the court, for cause shown, permits later filing.").  Glatfelter's attempt to sandbag Windward by filing additional documents late and then blatantly mischaracterizing those documents to the Court is the type of ambush-style litigation widely rejected by the courts.  *See Murphy v. Village of Hoffman Estates*, No. 95-C-5192, 1999 WL 160305 at *2 (N.D. Ill. Mar. 17, 1999); *McKay v. Town & Country Cadillac, Inc.*, No. 97-C-2101, 2002 WL 664024 at * 8 n.5 (N.D. Ill. Apr. 23, 2002); *Brennan v. AT&T Corp.*, No. 04-CV-433, 2006 WL 306755 at *9 (S.D. Ill. Feb. 8, 2006).

5

Again, nothing is new here, and Glatfelter is merely seeking to reargue its unsuccessful motion. Appvion has its claims against Glatfelter, and Appvion is pursuing them.

4. Glatfelter's Fourth Misrepresentation: Windward "Will Have A Right To Any Recovery"[11]

As noted in the prior section, despite Glatfelter's representation to the contrary, it points to no evidence demonstrating that Windward has been given Appvion's right to recovery from Glatfelter. In fact, the documents submitted by Glatfelter starkly contradict Glatfelter's statement. Glatfelter relies on the September 30, 2014, Funding Agreement, as produced by NCR in the Cost Recovery Action on June 19, 2015, to support its pretense that a) Windward is the real-party-in-interest because it is entitled to Appvion's 107 recoveries; and b) Mr. Tauscher is a Windward employee because his name and home office address appear in the document. [*See* Dkt. No. 40 at Ex. J.] But Glatfelter should read the entire exhibit and brought all of the relevant provision to the Court's attention. Section 10.2 of that agreement (entitled "API Recoveries") specifically provides that "API shall pay to the [BTI 2014] LLC one hundred percent (100%) of any Recoveries it obtains in connection with the adjudication or settlement or any CERCLA or common law contribution, cost recovery or reimbursement claims…." [Dkt. No. 40 Ex. J at 28.] Not only has Glatfelter attempted to mislead this Court by suggesting that it has evidence that Windward has usurped Appvion's right of recovery from Glatfelter, but it has provided this Court with the proof that any recovery by Appvion <u>will not go to Windward</u>: it goes to BTI 2014 LLC. The court has already rejected Glatfelter's legal argument that Windward's right to API's recoveries would make it the real-party-in-interest. It is now clear that Glatfelter's argument had no factual basis either. It can and should be rejected again.

---

[11] Supplemental Brief at 3.

5.  Glatfelter's Fifth Misrepresentation:  "Windward Asserts No Substantive Objections To This Discovery"[12]

Glatfelter's misrepresentation here is brazen.  Windward asserted numerous substantive objections to Glatfelter's subpoena, including substantive objections to each of the forty-two document demands.  [Dkt. No. 7 Exs. D, E.]  It is Glatfelter that has never offered any substantive response to these objections, apparently hoping the Court will forget about them if Glatfelter pretends they do not exist.  For its part, Windward timely asserted substantive objections to each and every document demand from Glatfelter both in its Responses and Objections and in the cover letter accompanying those responses and objections.  Then, in response to Glatfelter's motion to compel, Windward spent seven pages of its brief addressing substantive objections.  [Dkt. No. 16 at 14-20; *see also* Dkt. No. 20 Exs. M, N.]  Glatfelter's representation to the Court that no substantive objections were made is false, and demonstrably so on the record already before the Court.

Briefly, Windward has objected to the substance of Glatfelter's subpoena because the subpoena seeks (1) production of irrelevant documents; (2) production of duplicative and/or cumulative documents requested from the parties to the Cost Recovery Action and/or available publicly; (3) production of privileged materials from Windward's outside attorney, and logging such documents would be unduly burdensome; and (4) an overbroad and unduly burdensome production of decades worth of documents.  Windward's particular objections to each document demand are set forth in response to each demand.  Perhaps in an effort to conceal its untrue representation to the Court, nowhere in its "Supplemental" Brief does Glatfelter even reference any particular demand made to Windward, much less explain why any particular demand is not objectionable.  And Glatfelter never identifies any documents it contends it needs from

---

[12] Supplemental Brief at 4.

7

Windward, nor explain why any documents that this Court orders Appvion to produce would be insufficient for Glatfelter's purposes. This is because Glatfelter must realize that this Court's ruling on Appvion's Motion for Protective Order, whether granting the order or ordering production, will utterly moot Glatfelter's present subpoena against Windward. This is discussed more fully in Section 8 below.

6. Glatfelter's Sixth Misrepresentation: "Windward Has Sought To Run The Clock In Light Of Fact Discovery Closing"[13]

Astoundingly, Glatfelter attempts to blame Windward for Glatfelter's own delay. The Cost Recovery Action was commenced in January 2008, and the relationship between Appvion and Windward was an issue early on. Glatfelter never explains why it did not seek this discovery sooner. But even fast-forwarding seven years to January 2015 when Appvion filed its Ninth Amended Complaint, Glatfelter fails to explain why it did not subpoena Windward at that time. Instead, Glatfelter let months pass. Then, four months later, on May 15, 2015, this Court rejected Glatfelter's quixotic attempt to treat Windward as a party for discovery purposes. Following that order, Glatfelter again delayed, waiting almost a full month before issuing its subpoena on June 10 and purporting to serve it on June 11. Windward timely responded on June 25, a mere fourteen days later. Then Glatfelter waited another full month, not filing its motion to compel until July 21, a mere eight weeks before the Cost Recovery Action discovery deadline. Glatfelter has nobody to blame but itself for sitting on its hands for months rather than pursue discovery from Windward that Glatfelter belatedly contends is so critical.

---

[13] Supplemental Brief at 4.

7. Glatfelter's Seventh Misrepresentation: Mr. Tauscher Is An "Employee" Of Windward[14]

Throughout its Supplemental Brief, Glatfelter represents to the Court that Mr. Tauscher is the "employee" of Windward, despite having been provided with clear evidence conclusively demonstrating that this is not the case. Glatfelter cites to nothing supporting its falsehood,[15] nor does it indicate why it has failed to draw to the Court's attention the evidence submitted on the issue. [Dkt. No. 19 ¶ 3, Ex. A.]

First, Glatfelter contends that Mr. Tauscher is an "employee" because he signed Windward's Rule 17 ratification of Appvion's prosecution of claims against Glatfelter as "Director and General Counsel." Being a director of a company does not make one an employee. As Windward has explained to Glatfelter, Mr. Tauscher is general counsel to Windward through a retainer agreement signed with his law firm empowering the law firm "to "act as [Windward's] general counsel." Not only has the fact that Mr. Tauscher is an outside lawyer and not on the Windward payroll been explained to Glatfelter, but Glatfelter has a copy of the retainer agreement establishing that relationship. [Dkt. No. 19 at Ex. A.] Glatfelter offers no reason for its failure to address these facts or even bring them to the attention of the Court. The rules of professional conduct forbid such lack of candor.

Second, Glatfelter takes out of context two short questions and answers from a 2011 hearing in Brown County court where Mr. Tauscher answers "Yes" to a foundational questions regarding whether was (1) "employed by Windward" and was (2) "the general counsel of

---

[14] *See, generally*, Supplemental Brief at 5-6.

[15] Glatfelter's Supplemental Brief contains other false statements regarding Windward as well. For instance, Glatfelter contends that Windward has "no business other than this litigation." [Supplemental Brief at 3.] Glatfelter makes this misrepresentation baldly, not even attempting to support it with any evidence. Yet again Glatfelter has made an unsupported conclusory statement that is simply not true. For example, since mid-2009, Windward's business has included investing assets and defending itself from pension and indemnity claims asserted against it in the United Kingdom. Tauscher Decl. ¶ 9.

9

Windward." The issue of Mr. Tauscher's employment status was wholly irrelevant to the subject matter of that insurance proceeding, in which Mr. Tauscher was appearing as the designated representative of Appvion. And it is true that Windward employed Mr. Tauscher – through his firm – to act as its general counsel. Glatfelter attempts to tease from these two general answers a "gotcha" admission from which it can then argue that Windward employs a general agent who conducts Windward's operations in the United States.[16] Mr. Tauscher's assent to a colloquial use of the word "employ" in an examination not focusing on the legal specifics of an employer-employee relationship does not outweigh the plain documentary evidence provided to Glatfelter. Moreover, Mr. Tauscher's statements while testifying on behalf of Appvion cannot bind the separate entity Windward and create a previously non-existent employment relationship no matter how frequently Glatfelter repeats its misstatement.

Third, Glatfelter points to the fact that Mr. Tauscher is listed amongst those that should receive notice under the 2014 Funding Agreement. Glatfelter ignores the fact that the same clause requires notice to "Company Secretary, Windward Prospects Ltd., Mitre House, 160 Aldersgate St., London…." Unlike Mr. Tauscher, Windward's Company Secretary is its registered agent for service of process. Not only did Glatfelter ignore this when it was purporting to serve its subpoena and motion, but now it ignores this fact again when leaping to the illogical conclusion that Mr. Tauscher is somehow an employee of Windward because his name and address appear in the Funding Agreement. Demonstrating still more selective reading and citation to this Court, Glatfelter also ignores the fact that other outside counsel (for example,

---

[16] Glatfelter's tactic in this regard is not limited to Windward. For example, in its "Supplemental" Brief, Glatfelter attempts to apply this same trick of deliberate misunderstanding to this Court's own rulings, suggesting that this Court held that Windward was the "real party-in-interest" by citing to the May 15, 2009, Order at page 7 ("AWA is the real part[y] in interest here"). Of course, the real party in interest doctrine was not the issue being addressed by the Court in 2009, but Glatfelter persists in the misrepresentation despite the Court's clear ruling mere months ago that Windward had not usurped Appvion's status as the real party in interest.

"Cravath, Swaine & Moore LLP" and "DLA Piper LLP") are listed in connection with notice for the various other parties to that agreement. Nothing in the 2014 Funding Agreement changes Mr. Tauscher's employment status (or lack thereof) with Windward. Windward does not have any employees in the United States.

While Glatfelter offers no contrary evidence or reason to disbelieve the evidence already submitted by Windward, out of an abundance of caution, Windward notes for the record that (1) the address Glatfelter focuses on from the 2014 Funding Agreement is the business address of Brian M Tauscher PLLC (Tauscher Decl. ¶ 5, Exs. B, C, D); (2) Mr. Tauscher does not receive any "wages" taxed by the IRS (Tauscher Decl. ¶¶ 3, 4, Ex. A); and (3) Mr. Tauscher's "principal business or profession" is attorney at law with the law firm of "Brian M Tauscher PLLC," from which his income is derived. (Tauscher Decl. ¶¶ 4, 8, Ex. A at Schedule C, Ex. E.) Glatfelter's contention that Mr. Tauscher is a salaried employee of Windward is rank *ipse dixit* and has been disproved repeatedly. [*See also* Tauscher Decl. ¶ 10.]

8. Glatfelter's Eighth Misrepresentation: "Appvion's Pending Motion For A Protective Order Does Not Limit Glatfelter's Ability To Seek Discovery From Windward"[17]

Perhaps Glatfelter's biggest misrepresentation is its total mischaracterization of the impact that a ruling on Appvion's pending motion for a protective order will have on the enforcement of Glatfelter's subpoena. Appvion did not move for a protective order because of an inordinate burden unique to it nor because the law uniquely protects Appvion from the requested disclosure. Appvion moved for a protective order based upon the patent irrelevance of the entire discovery fishing expedition Glatfelter is pursuing into Appvion's collateral sources of indemnity, be that indirectly from Windward and other entities or via traditional insurance. If

---

[17] Supplemental Brief at 9.

this Court awards Appvion a protective order, it will be because the Court has found that the documents Glatfelter seeks are irrelevant.[18]  Glatfelter cannot use a subpoena to compel the production of irrelevant documents from Windward (or any other entity), and Glatfelter's suggestion that it would continue to pursue production from Windward in the face of a Court order that the material sought is irrelevant is astounding.

Of course, if this Court were to deny Appvion's motion for a protective order, in addition to Windward's other jurisdiction and service objections, Windward still would have no obligation to produce because such production would be entirely and unnecessarily duplicative of the production made by Appvion.  *See In re Subpoena to Witzel*, 531 F.3d 113, 119 (1st Cir. 2008) (affirming denial of motion to compel production from a third party where documents were "principally discoverable from the defendants themselves"); *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996) (noting that "'[i]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45].'") (citation omitted); *see also Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A SR, 2013 WL 5652759, at *3 (W.D.N.Y. Oct. 15, 2013); *Gen. Parts Distribution, LLC v. Perry,* No. 12-MC-93 SRN/SER, 2013 WL 3223374, at *4 (D. Minn. Jun. 25, 2013); *Burns v. Bank of Am*., No. 03 CIV. 1685 RMB JCF, 2007 WL 1589437, at *14 (S.D.N.Y. Jun. 4, 2007) ("plaintiffs' subpoena for precisely the same documents as demanded in their First Request for the Production of Documents is clearly duplicative"); Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the frequency or extent of discovery . . . if it determines that. . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive").

---

[18] Glatfelter ignores the possibility that were this Court to find jurisdiction (which it should not), Windward could simply join Appvion's already-filed and fully-briefed motion for protective order.

Nowhere does Glatfelter support its latest supposition (Supplemental Brief at 8) that Windward likely has relevant, non-privileged documents other than those Appvion might produce. To the contrary, to the extent that Glatfelter has only pointed to evidence of individuals acting on Appvion's behalf, Appvion's documents, if ordered produced, will overlap entirely those Windward might have in its possession. The evidence Glatfelter provides makes this very point. It cites Mr. Tauscher's testimony: "Windward Prospects discloses this [insurance settlement] information to two individuals at Appleton Papers Inc[.]" [Supplemental Brief at 7.]

Additionally, Glatfelter wholly ignores that the Federal Rules allow this Court to enter a discovery order in any form it pleases, including an order protecting Windward from Glatfelter's attempts at duplicative, cumulative, and irrelevant document productions. Fed. R. Civ. P. 26(b)(2)(C). Glatfelter cannot obtain improper discovery no matter how Glatfelter tries to game third-party discovery procedure.

### B. This Court Lacks Personal Jurisdiction Over Windward

Glatfelter's personal jurisdiction argument fails because Glatfelter never even attempts an analysis of any supposed United States contacts of the purportedly subpoenaed entity Windward. Instead, Glatfelter relies on appearances by individuals affiliated with Windward but testifying in other capacities (and not on behalf of Windward) as somehow evidencing that the entity Windward has purposefully availed itself of the United States.[19] Glatfelter is not attempting to subpoena Brian Tauscher the individual. It is attempting to subpoena the entity Windward.

---

[19] Curiously, Glatfelter also cites to a hearsay statement from a non-party, Mr. Randall Stone, Esq. of the U.S. Department of Justice, as purported evidence of Windward's contacts with the United States. First, Mr. Stone obviously is not speaking or acting on behalf of Windward. Second, Mr. Stone is not even writing to Windward, but instead is writing to a Mr. Schlickman of Sidley Austin Brown & Wood. Contrary to Glatfelter's representation, Mr. Schlickman did not represent Appvion at the time of this letter and had not for years. Third, to the extent Mr. Stone mentions Windward, he specifically notes that Windward is not acting on its own behalf, but instead is acting "on behalf of Appleton Papers Inc." Nothing in this letter demonstrates that Windward is availing itself of the United States, nor would Mr. Stone's characterization of his understanding of the Windward-Appvion relationship be competent evidence of that relationship under any circumstances.

13

The Supreme Court has been clear that asserting personal jurisdiction over a corporation is proper only if that company has sufficient minimum contacts with the jurisdiction and has purposefully availed itself of the privilege of conducting activities within the jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) ("This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person"); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). In *be2 LLC v. Ivanov*, the Seventh Circuit found no personal jurisdiction because there was no showing that the defendant "deliberately targeted or exploited the Illinois market"). 642 F.3d 555, 558 (7th Cir. 2011); *see also Lakeside Brige & Steel Co. v. Mountain State Constr. Co*., 597 F.2d 596 (7th Cir. 1979) ("unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). Glatfelter must show both minimum contacts and that Windward conducts business here.

Even if that standard has been met, which it has not, due process only allows the exercise of personal jurisdiction if doing so does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). Glatfelter cites no authority for its novel proposition that a potential financial interest in the outcome of a litigation creates personal jurisdiction over a company. Glatfelter's position is contrary to well-settled jurisprudence that looks to the company's business contacts with a jurisdiction (not its financial interests) to determine whether the court has jurisdiction. *See, e.g., Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014). Indeed, Glatfelter's proposed financial interest rule would greatly expand personal jurisdiction beyond constitutional due process limits. The personal jurisdiction inquiry focuses on where a company is located and conducts its

14

business (*see be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011); *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assoc's of Houston Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010)), not where that company's financial interests may lie.

Windward is an English company with no offices in the United States and no employees in the United States. [Dkt. No. 19 ¶¶ 4, 7.] It does not transact any business in the United States, and it does not own any assets in the United States. [Dkt. No. 19 ¶ 7.] The last United States asset indirectly owned by Windward was Appvion, which Windward sold almost fifteen years ago. [Dkt. No. 19 ¶ 8.] While Glatfelter touts that Windward has an indemnification obligation to Appvion, Glatfelter conveniently ignores that, simultaneous with the creation of that obligation, Windward assigned the indemnification obligation to another company, AWAB (which this Court has heard about over the history of the Cost Recovery Action as well as the Lower Fox River CERCLA enforcement action). That other company has met the indemnification obligations. [Dkt. No. 19 ¶¶ 10, 11.] Windward has not made any indemnification payments into the United States. [Dkt. No. 19 ¶ 11.] Far from purposefully availing itself of the privilege of doing business in the United States, Windward has long since divested itself of any U.S. business activities and took active steps to avoid a presence in the United States.

Glatfelter has not shown any Windward contacts with the forum, nor has it demonstrated that Windward is conducting any business in the United States. Each of the transcripts cited by Glatfelter, in the very quotations selected by Glatfelter, make plain that the individual giving testimony was doing so on behalf of Appvion. Glatfelter does not point to any testimony or contacts by Windward. Glatfelter misses the point entirely by arguing "[i]f Mr. Tauscher lacks the authority to act on Windward's behalf, then Windward's ratification to this Court was offered

15

improperly." (Supplemental Brief at 8.) Just because Mr. Tauscher has the authority to act on Windward's behalf in certain circumstances does not mean that <u>every activity</u> undertaken by Mr. Tauscher is legally considered "Windward activity" or activity done on Windward's behalf. Glatfelter cannot impute all of Mr. Tauscher's day-to-day activities to Windward. Further, retention of United States counsel by an alien company does not subject that alien company to personal jurisdiction in the United States. *Cf. Griffin Whitaker, LLC v. Torres*, No. CIV.A. DKC 10-0725, 2010 WL 2696704, at *5 (D. Md. Jul. 7, 2010) ("unilateral in-state activities on behalf of a non-resident client are insufficient to establish personal jurisdiction over the client").

Mr. Tauscher and Mr. Gower[20] both have testified on behalf of Appvion regarding facts personally known to them, but Glatfelter has offered no examples of either ever testifying on behalf of Windward. The fact that Windward's indirect indemnity arrangements with Appvion granted it authority[21] with respect to Appvion's prosecution of its claims does not mean that Windward has come into the United States and done its own business here. To the contrary, as public documents long ago produced to Glatfelter make clear, it is AWAB – not Windward – that has exercised the authority granted to Windward. The 2001 Fox River AWA Environmental Indemnity Agreement granted Windward such authority in section 5.2.2 (Dkt. No. 19 Ex. B), but section 10.3 allowed Windward to assign this authority to AWAB, which it did via the Assignment and Assumption Deed of the very same date. [Dkt. No. 19 ¶ 10, Ex. D.] Glatfelter is thus misleading the court when it claims "Windward also has a power of attorney from

---

[20] Although Glatfelter fails to make this clear to the Court, at the time of Mr. Gower's 2007 deposition, he was neither a director nor an employee of Windward. Mr. Gower was an independent legal advisor operating pursuant to a retainer agreement. [Dkt. No. 40 Ex. B at 17:2-18:2.]

[21] Glatfelter points this Court repeatedly to testimony regarding Windward's power of attorney, without providing the document to the Court despite the fact that it was produced to Glatfelter February 6, 2015. That power of attorney makes clear that it only applied with respect to "claims against [Appvion's] past and present insurers…." [King Decl. Ex. A.]

16

Appvion to manage all this litigation," and is factually incorrect to assert, without any support at all, that "Mr. Tauscher is the agent [of Windward] who exercises that power of attorney."

### C. Glatfelter Should Be Sanctioned

Glatfelter and its counsel have an obligation to inquire and present this Court with a true and accurate description of the facts and this Court's prior rulings. Instead, Glatfelter has misrepresented testimony, deliberately omitted pertinent portions of documents, and purposefully turned a blind-eye and ignored relevant and dispositive facts. Glatfelter's sole goal in this regard is the harassment of Windward and attempting to collaterally attack this Court's prior ruling and reargue its motion to dismiss based upon the real party in interest doctrine. This Court should sanction Glatfelter for its incomplete and purposefully misleading presentation of its so-called facts.

Additionally, Windward is entitled to an award of attorneys' fees and costs incurred as a result of Glatfelter's unnecessary, harassing, and unjustified pursuit of irrelevant, duplicative and cumulative discovery from Windward. See Fed. R. Civ. P. 37(a)(5)(A); *Carlson v. City of Delafield*, No. 08-C-751, 2010 WL 1641915, at *3 (E.D. Wis. Apr. 21, 2010) (denying motion to compel and awarding costs, disbursements, and reasonable actual attorneys' fees incurred defending the motion to compel); *Prolitec, Inc. v. Scentair Techs, Inc*., No. 12-C-483, 2014 WL 143768, at *3 (E.D. Wis., Jan. 10, 2013) (same).

### CONCLUSION

For the foregoing reasons, this Court should deny Glatfelter's motion to compel in its entirety and award Windward its costs and fees incurred in responding this unjustified motion. *See* Fed. R. Civ. P. 37(a)(5)(B) and 45(d)(1).

17

Dated: New York, New York
       September 2, 2015

                                        OLSHAN FROME WOLOSKY LLP


                            By:     /s Jeremy M. King
                                    Jeremy M. King
                                    Park Avenue Tower
                                    65 East 55th Street
                                    New York, New York 10022
                                    (212) 451-2300
                                    jking@olshanlaw.com

                                    *Attorneys for Windward Prospects Ltd.*