IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| P. H. Glatfelter Company, | ) | |
| Movant, | ) ) ) | |
| v. | ) ) | No. 15-MC-00046 |
| Windward Prospects Limited, | ) ) ) | |
| Respondent. | ) | |

| | | |
|---|---|---|
| APPVION, INC. and NCR CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08-CV-00016-WCG [LEAD CASE] |
| P. H. Glatfelter Co., *et al.,* | ) ) | |
| Defendants. | ) | |

**P. H. GLATFELTER COMPANY'S RESPONSE TO
WINDWARD PROSPECTS LIMITED'S REQUEST FOR SANCTIONS**

**INTRODUCTION**

Windward Prospects Limited ("Windward") has responded to a motion to compel compliance with a third-party document subpoena by the P. H. Glatfelter Company ("Glatfelter") with a request that Glatfelter be "sanctioned." Civil Local Rule 7(d) requires Glatfelter to respond to that request for sanctions lest it be treated as unopposed, and Glatfelter does so here.[1] The tone of Windward's papers speaks volumes about the merits of its assertions. We recall only one similar request in the long history of this litigation, and that request was precipitated by API's destruction of microfiche. Although this Court concluded that API's claim that it bore no responsibility for the destruction of the microfiche was unconvincing, the Court nonetheless denied the request for sanctions. (Dkt. 1269). The parties' history of civility has been a bright spot of this litigation. The assertion that we have "misrepresented" or, worse, "prevaricated," in our characterization of documents that we have appended in their entirety not only makes no logical sense – we do not think it is possible to lie about the contents of something one attaches – but the assertion departs disturbingly from the going-on-eight-year history of professionalism in this case.

**1.  Windward's Motion Does Not Comply With Civil Local Rule 7.**

A sanctions motion should clearly state the basis for the request. Windward appears to conflate requests under Federal Rules of Civil Procedure 11, 37(a)(5), and 45. One cannot tell which rule Windward thinks applies. Because Windward does not make its basis clear, the motion itself violates Civil Local Rule 7 ("[e]very motion must state the statute or rule pursuant to which it is made").

---

[1] Windward has requested a court order. Under Federal Rule of Civil Procedure 7(b)(1), a request for a court order must be made by motion. Windward's request is not in proper form, but must be treated as a motion, providing Glatfelter with the obligation to respond pursuant to Civil Local Rule 7(d).

### 2. Windward Did Not Comply with Rule 11.

Even if the Court could consider Windward's sanctions motion notwithstanding Windward's election to flout Civil Local Rule 7, the motion has no merit under Rule 11. Windward has not complied with Rule 11(c)(2), and so its motion cannot be granted under Rule 11.

### 3. Rule 37(a)(5) Does Not Support Windward's Motion.

Windward cites Rule 37(a)(5)(A) in support of a request for an award of attorneys' fees and costs for what it describes as "Glatfelter's unnecessary, harassing, and unjustified pursuit of irrelevant, duplicative and cumulative discovery from Windward[.]" (Misc. Dkt. 41 at 17). Any request for fees and costs should have been brought by separate motion pursuant to Local Rule 7, not tucked at the end of a 17-page brief. Moreover, Windward does not really argue that Glatfelter's subpoena is "unnecessary" or "duplicative." Windward argues that Glatfelter's subpoena is unenforceable because no court in the United States can exercise personal jurisdiction over Windward.

### 4. Windward's Motion Does Not Satisfy Rule 45.

If the issue really were predicated on the irrelevance or duplication, Windward should have brought its request for fees under Rule 45, as opposed to Rule 37.[2] Rule 45(d)(1) allows the Court to sanction a party that breaches its obligation to protect nonparties from unjustifiable discovery requests. Rule 45(d) contemplates that subpoenaed persons will move to quash or to modify subpoenas that seek overbroad or otherwise objectionable discovery from nonparties as a predicate to sanctions. Fed. R. Civ. P. 45(d)(3); *see also Builders Ass'n of Greater Chi. v. City of Chicago*, 215 F.R.D. 550 (N.D. Ill. 2003). Indeed, neither of the cases cited by Windward

---

[2] Windward's fleeting citation to Rule 45(d)(1) in the conclusory sentence, in addition to Rule 37, does not cure this defect.

2

involved a third-party subpoena; they both addressed disputes between parties to the litigation. Windward neither moved to quash nor to modify, and so Rule 45 does not apply.

> **5. Windward Does Not Show that Glatfelter's Motion Was Not "Substantially Justified."**

Even if Rule 37(a)(5) applied, the rule expressly states that fees and costs must not be awarded if the motion was "substantially justified." A discovery motion is substantially justified if there is a "genuine dispute," or "if reasonable people could differ as to [the appropriateness of the contested action]." *In re Subpoenas to Folliard*, No. 10-MC-789, 2012 WL 907763, at *4 (D.D.C. Mar. 16, 2012) (citing *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)). In this case, Glatfelter's motion is more than "substantially justified"; it should be granted.

Windward has submitted its response "so that the record can be clarified and the issue of the Court's lack of personal jurisdiction can be free from Glatfelter's intentional obfuscation of the true facts." (Misc. Dkt. 41 at 2). And that is Windward's contention: it argues that Glatfelter had no genuine basis to claim that Windward has minimum contacts with United States.

To the contrary, Glatfelter personally served Brian Tauscher with a subpoena addressed to Windward. There is no dispute that Mr. Tauscher is a director of Windward. There is no dispute that Mr. Tauscher is Windward's "general counsel." There is no dispute that Windward's business is, at least in part, to manage the Fox River litigation for Appvion, Inc. ("Appvion"). There is no dispute that Windward, being a corporation, cannot do anything for itself, but must rely on human agents for the purpose. And there is no dispute that Mr. Tauscher is among those human agents who managed the Fox River matter for Appvion.

Under the "minimum contacts" analysis, the acts of a corporation's agents or employees are "attributed to the corporation for jurisdictional purposes, so long as the acts were within the

3

course and scope of the agency or employment." *In Re Automotive Refinishing Paint*, 229 F.R.D. 482, 488, 491 (E.D. Pa. 2005) (internal quotation and citation omitted); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945); *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 265 F.3d 548, 551 (7th Cir. 2001) (finding sufficient contacts where foreign corporation engaged a U.S. law firm, instructed the law firm to act on its behalf in the United States, and caused multi-million dollar losses in the U.S.).

Windward calls Glatfelter's assertion of minimum contacts a "whole cloth fabrication," but that is the one thing it cannot be. Windward asserts that Mr. Tauscher is an outside lawyer hired as "general counsel" to Windward, offering up Mr. Tauscher's telephone bill to corroborate his affidavit. But Glatfelter has in part relied for its assertions on testimony that Mr. Tauscher gave under oath in Judge Zuidmueller's court.[3] Glatfelter quoted Mr. Tauscher's testimony that he was Windward's employee. In addition, Glatfelter provided the full transcript of Mr. Tauscher's testimony, which is replete with consistent, confirming statements. *See, e.g.,* Misc. Dkt. 40-3 at 30:22-31:3 (on direct, distinguishing role as "outside counsel" from role as "general counsel"); Misc. Dkt. 40-1 at 6:7-10 (same distinction on cross). Whatever is true, Glatfelter cannot be accused of "whole cloth fabrication."

Moreover, even if Mr. Tauscher were not an "employee" of Windward, Windward's contacts in the United States are sufficient for this Court to exercise jurisdiction.[4] Mr. Tauscher

---

[3] Additionally, Glatfelter also cited to the deposition transcript of Christopher Gower (who is now Windward's Chief Executive Officer) from the Brown County proceedings—a document that Appvion did not produce until August 17, 2015, and which was not available in the public court documents. Many other documents exist that are still filed under seal in the courthouse that sits across the street from this Court.

[4] The result would not be different under Wisconsin's broad long-arm statute, § 801.05(1)(d), Stats. *See, e.g.*, *Druschel v. Cloeren*, 2006 WI App 190, ¶ 15, 295 Wis. 2d 858, 868, 723 N.W.2d 430, 436 (2006) (contacts of a non-resident, made as an agent of an out of state business, count toward the minimum contacts analysis).

4

is Windward's Director and General Counsel, he resides in the United States, and he has conducted Windward's business pertaining to the Fox River claims in the United States within the scope of his agency or employment with Windward.  Even when appearing as an "API representative" in the Brown County insurance litigation, Mr. Tauscher did so because he was exercising the power of attorney granted by Appvion to Windward on behalf of Windward. (Misc. Dkt. 40-1 at 5:15-6:4).  Mr. Tauscher also provided oversight for the invoice approval and payment process for cleanup costs submitted to the Lower Fox River Remediation LLC (Misc. Dkt. 40-3 at 36:7-20); negotiated settlements with Appvion's insurers so that Windward could recoup payments that it made on Appvion's behalf (*Id.* at 34:24-35:12); received correspondence relating to the 2014 Funding Agreement as the designated contact for Windward (Misc. Dkt. 40-10); and interjected Windward into this litigation by submitting an affidavit on Windward's behalf to ratify Appvion's claims against Glatfelter and other defendants (Dkts. 1657; 1658). These contacts have continued systematically for a number of years, and are more than sufficient to constitute minimum contacts between Windward and this forum to justify this Court's exercise of jurisdiction consistent with due process.  *See Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447-48 (1952).[5]

"[I]f an authorized representative of a foreign corporation be physically present in . . . the forum and be there engaged in activities appropriate to accepting service or receiving notice on its behalf, we recognize that there is no unfairness in subjecting that corporation to the

---

[5] The *Perkins* court found that the foreign corporation was subject to general jurisdiction based on activities that parallel Mr. Tauscher's: in *Perkins*, the company's president and general manager temporarily returned to his home in Ohio and engaged in "activities appropriate to accepting service or receiving notice" on the company's behalf, including maintaining an office in which he conducted his personal affairs and did many things on behalf of the company, maintained office files of the company, carried out correspondence relating to the business of the company, transferred funds, and supervised policies dealing with the corporation's assets. *Perkins*, 342 U.S. at 447-48.

jurisdiction of the courts of that state through such service of process upon that representative." *Perkins*, 342 U.S. at 444. There is no unfairness in subjecting Windward to jurisdiction here as Mr. Tauscher has engaged in numerous authorized activities in the United States on Windward's behalf.

Furthermore, even though Mr. Tauscher's U.S. activities are enough by themselves to satisfy due process, Windward's overall contacts direct relate to the claims in this litigation, and thus, satisfy the test for specific jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *see also Application to Enforce Admin. Subpoenas Duces Tecum of the S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir.1996) (the focus is on the connection between nonparty's contacts with the forum and discovery order at issue). Here, the connection between Windward's contacts in the U.S. are closely linked to Glatfelter's discovery requests as Windward's recoveries and financial arrangements with Appvion directly impact Appvion's cost-sharing arrangement with NCR (which still faces CERCLA liability), and impacts Appvion's cost recovery claim. Accordingly, the exercise of specific jurisdiction would not be unreasonable.

Regardless of any distinctions that Windward suggests should be drawn from Mr. Tauscher's tax returns, personal service of the subpoena on Mr. Tauscher was valid for effective delivery of the subpoena under Rule 45.[6] Federal Rule of Civil Procedure 4 recognizes valid

---

[6] Moreover, the purpose of service under Rule 45 is to provide the nonparty with adequate notice, which Windward clearly has. The Seventh Circuit has recently joined the growing number of jurisdictions in ruling that personal service is not necessary for proper service under Rule 45. *See Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir.2012). When personal service is not utilized for delivery of a Rule 45 subpoena, courts have looked to other service provisions. *See, e.g., Ultradent Prods., Inc. v. Hayman*, No. M8–85 RPP, 2002 WL 31119425, at *3 (S.D.N.Y. Sept.24, 2002) (finding that service of a subpoena pursuant to Rule 45 was proper because it complied with the delivery procedures proscribed in Rule 4(h)); *Green v. Baca*, No.

6
Case 1:15-mc-00046-WCG   Filed 09/11/15   Page 7 of 10   Document 44

service on a domestic or foreign corporation by means of service authorized by state law for serving a summons in the state "where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1); 4(h)(1). New Hampshire law, where the subpoena was served, provides that either personal or abode service is effective on a corporation when made "upon the clerk, treasurer, cashier, <u>or one of the directors</u>, trustees or managers, if any, in the state. . . ." N.H. Rev. Stat. § 510:2, § 510:14 (West 2015) (emphasis added). Here, it is undisputed that Mr. Tauscher, a Director of Windward, was personally served the subpoena directed at Windward in New Hampshire. Therefore, Windward has been properly served with the subpoena.

But when all is said and done, even if this were all a huge misunderstanding, even if Mr. Tauscher in fact had no relationship whatsoever with Windward, even if he were actually a full-time resident of France, or even if Windward had never heard of the Fox River litigation, Glatfelter's assertion that Mr. Tauscher is Windward's employee or agent in the United States who manages the Fox River matter for Appvion is based on Mr. Tauscher's own sworn testimony. It is not a "whole cloth fabrication."

We could go on picking apart Windward's allegations one-by-one. For example, although Windward claims that it has not been found to be a real party in interest, Windward ignores the fact that Appvion has already conceded that Windward may be a real party in interest based on its reserved subrogation rights. (Dkt. 1657). But there is no need to burden the Court further. The papers speak for themselves. Glatfelter has misrepresented nothing. Indeed, Glatfelter almost surely has the facts right, else Windward would be less vituperative. To the extent that Glatfelter is missing facts, it is because Windward has not produced the documents

---

CV 02–204744, 2005 WL 283361, at *4 n. 1 (C.D. Cal. Jan.31, 2005) (finding service of subpoenas pursuant to delivery procedures under Rule 5(b) was sufficient service for Rule 45).

that Glatfelter seeks, and Glatfelter can hardly be criticized for not characterizing documents that Windward has withheld.

## CONCLUSION

Windward's request for sanctions is not properly before the Court and lacks merit. Glatfelter believes the papers speak for themselves. Any difference in opinion on the merits of the motion to compel is for the Court to resolve, but Windward's accusations are unnecessary and uncharacteristic of this litigation. Glatfelter respectfully requests that the Court deny Windward's request for sanctions, and proceed to order Windward to produce the documents requested in Glatfelter's duly served subpoena.

Dated: September 11, 2015

> Respectfully submitted,
>
> */s/ Francis A. Citera*
> David G. Mandelbaum
> Caleb J. Holmes
> Jillian C. Bunyan
> Kaitlyn R. Maxwell
> Greenberg Traurig, LLP
> 2001 Market Street
> Suite 2700
> Philadelphia, PA 19103
>
> Francis A. Citera
> Greenberg Traurig, LLP
> 77 West Wacker Drive
> Suite 3100
> Chicago, IL 60601
>
> *Attorneys for*
> *P. H. Glatfelter Company*

## Certificate of Service

I hereby certify that on September 11, 2015, I electronically filed the foregoing P. H. Glatfelter Company's Response to Windward Prospects Limited's Request for Sanctions with the Clerk of Court for the United States District Court for the Eastern District of Wisconsin by using the Electronic Court Filing System ("CM/ECF"). I certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to any non-registered participants.

*/s/ Francis A. Citera*
Francis A. Citera
